**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION**

| | |
|---|---|
| **CANON INC.,** | |
| **Plaintiff,** | Case No.: 1:11-CV-00989-AJT-IDD |
| **v.** | Judge: Hon. Anthony J. Trenga |
| **UNINET IMAGING, INC.**<br>**and UI SUPPLIES, INC.,** | Magistrate Judge: Hon. Ivan D. Davis |
| **Defendants.** | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION
<u>FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION</u>**

**TABLE OF CONTENTS**

I.  INTRODUCTION ...................................................................................................1

II.  BACKGROUND ...................................................................................................2

    A.  Canon's Patented Technology ....................................................................2

    B.  UniNet and Its Infringing Activities ..........................................................5

    C.  UniNet's Default.........................................................................................6

III.  ARGUMENT.........................................................................................................8

    A.  Canon Is Entitled to Default Judgment Against UniNet.............................8

        1.  The Court Has the Requisite Jurisdiction ......................................8

        2.  UniNet Is Liable for Patent Infringement......................................9

            a.  The Allegations in the Complaint Sufficiently Establish Liability ..............................................................9

            b.  Dr. Sturges' Declaration Confirms That UniNet Has Infringed the '012 Patent ..................................................10

    B.  As Relief, Canon Is At Least Entitled to a Permanent Injunction .........................10

        1.  Canon Has Suffered and Will Continue to Suffer Irreparable Harm in the Absence of a Permanent Injunction ....................12

            a.  Loss of Market Share.................................................................12

            b.  Loss of Goodwill and Injury to Reputation .................................14

        2.  Monetary Damages Are an Inadequate Form of Compensation ..........................................................................14

        3.  The Balance of Hardships Weighs in Canon's Favor...............................15

        4.  The Public Interest Favors the Grant of a Permanent Injunction ..........................................................................16

IV.  CONCLUSION.....................................................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Abbott Labs. v. Sandoz, Inc.*,
544 F.3d 1341 (Fed. Cir. 2008) .................................................................................. 13

*ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*,
No. 2:10cv248, 2011 WL 5878365 (E.D. Va. Nov. 23, 2011) ............................. 12, 13, 15, 16

*Baker Hughes Inc. v. Nalco Co.*,
676 F. Supp. 2d 547 (S.D. Tex. 2009) ....................................................................... 14

*Bushnell, Inc. v. Brunton Co.*,
673 F. Supp. 2d 1241 (D. Kan. 2009) ........................................................................ 14

*Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*,
134 F.3d 1085 (Fed. Cir. 1998) .................................................................................. 13

*eBay Inc. v. MercExchange, LLC*,
547 U.S. 388 (2006) .................................................................................................... 11

*EMI April Music, Inc. v. White*,
618 F. Supp. 2d 497 (E.D. Va. 2009) .......................................................................... 8

*Enpat, Inc. v. Budnic*,
No. 6:11-cv-86, 2011 WL 1196420 (M.D. Fla. Mar. 29, 2011) ............................... 16

*ePlus, Inc. v. Lawson Software, Inc.*,
No. 3:09cv620, 2011 WL 2119410 (E.D. Va. May 23, 2011) ............................. 12, 14, 15, 16

*EZ Gard Indus., Inc. v. XO Athletic Co.*,
No. 07-4769, 2008 WL 1827490 (D. Minn. Apr. 23 2008) ...................................... 13

*Hammerhead Entm't, LLC v. Ennis*,
No. 4:11cv65, 2011 WL 2938488 (E.D. Va. July 19, 2011) ................................... 8, 9

*Hybritech Inc. v. Abbott Labs.*,
849 F.2d 1446 (Fed. Cir. 1988) .................................................................................. 12

*i4i L.P. v. Microsoft Corp.*,
670 F. Supp. 2d 568 (E.D. Tex. 2009) .................................................................. 12, 13, 15

*Integrated Sports Media, Inc. v. Buruca Brother's Va., Inc.*,
No. 1:11cv0839, 2011 WL 5873967 (E.D. Va. Nov. 1, 2011) ............................... 8, 10

*MercExchange L.L.C. v. eBay Inc.*,
500 F. Supp. 2d 556 (E.D. Va. 2007) .......................................................................... 15

*Purdue Pharma L.P. v. Boehringer Ingelheim GMBH*,
    237 F.3d 1359 (Fed. Cir. 2001).................................................................................. 13

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011).................................................................................. 11

*Telequip Corp. v. The Change Exchange*,
    2006 WL 2385425 (N.D.N.Y. Aug. 15, 2006) ................................................... 10, 17

*Toolchex, Inc. v. Trainor*,
    No. 3:08-CV-236, 2009 WL 2244486 (E.D. Va. July 24, 2009)........................... 8, 14

*Trading Techs. Int'l, Inc. v. eSpeed, Inc.*,
    No. 04C5312, 2008 WL 4531371 (N.D. Ill. May 22, 2008) .................................... 12

*Warrior Sports, Inc. v. STX, L.L.C.*,
    No. 07-14597, 2008 WL 783768 (E.D. Mich. Mar. 19, 2008) ................................ 14

*Zen Design Group, Ltd. v. Clint*,
    No. 08-cv-14309, 2009 WL 4050247 (E.D. Mich. Nov. 23, 2009).................................. 9, 11

**Statutes & Rules**

28 U.S.C. § 1331................................................................................................................ 9

28 U.S.C. § 1338(a) ........................................................................................................... 9

28 U.S.C. § 1391(b) ........................................................................................................... 9

28 U.S.C. § 1391(c) ........................................................................................................... 9

28 U.S.C. § 1400(b) ........................................................................................................... 9

35 U.S.C. § 283............................................................................................................. 1, 11

Fed. R. Civ. P. 4(h) ........................................................................................................... 9

Fed. R. Civ. P. 8(b)(6)....................................................................................................... 8

Fed. R. Civ. P. 55.............................................................................................................. 8

## I.    INTRODUCTION

Plaintiff Canon Inc. ("Canon") filed the present lawsuit against Defendants Color Imaging, Inc., UniNet Imaging, Inc., and UI Supplies, Inc. on September 15, 2011, seeking a permanent injunction, among other relief.  Canon and Color Imaging, Inc. thereafter agreed to sever and transfer Canon's claim against Color Imaging, Inc. to the Northern District of Georgia, which the Court ordered (Doc. 19), leaving only Canon's claims against UniNet Imaging, Inc. and UI Supplies, Inc. (collectively, "UniNet") pending before this Court.  Despite having been properly served (Doc. 9 & 10), UniNet has failed to respond to Canon's complaint.  Accordingly, on November 2, 2011, the Clerk entered default as to UniNet (Doc. 17).  By this motion, Canon seeks entry of default judgment and issuance of a permanent injunction against UniNet pursuant to Federal Rule of Civil Procedure 55(b)(2) and 35 U.S.C. § 283.

Virtually all copy machines utilize a fine, powdery substance called toner, which is adhered to paper with heat and pressure to create an image.  The patent at issue in this lawsuit—U.S. Patent No. 7,647,012 ("the '012 patent")[1]—describes and claims, *inter alia*, a container for the toner (called a "toner bottle" or "toner supply container") that is specially designed to deliver the toner to the copy machine in a reliable, clean, and efficient manner.

UniNet has infringed the '012 patent by making, using, importing, selling and/or offering to sell toner bottle products that are essentially lower-priced knock-offs of Canon's patented toner bottle products.  UniNet's infringement has resulted in an irretrievable loss of market share and goodwill and damage to Canon's reputation in the marketplace.  Unlike UniNet, Canon has invested significant resources to research and develop its toner bottle products and the copiers in

---

[1]    A copy of the '012 patent is attached as Exhibit A to the accompanying DECLARATION OF ROBERT H. STURGES, PH.D., P.E. IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AND PERMANENT INJUNCTION.  Herein, "Sturges ¶ __" refers to the numbered paragraphs of that declaration.

which they are used.  Unless UniNet is permanently enjoined from further infringement, demand for Canon's toner bottle products will decline further, thereby preventing Canon from recouping the full amount of its investment.  Canon, therefore, is entitled to entry of a permanent injunction against UniNet.  Canon is also entitled to damages for UniNet's past infringement, but to streamline the issues, does not request such damages in connection with the default judgment sought by this motion, and seeks only the issuance of a permanent injunction.

Accordingly, Canon's motion for default judgment and issuance of a permanent injunction should be granted.

## II.    BACKGROUND

### A.    Canon's Patented Technology

Canon is a leading innovator in the field of copiers, laser printers, and laser fax machines, and has received more than 11,000 U.S. patents in this area.  (Kitamori ¶ 4.)[2]  In a typical copier, an image is formed by adhering toner to a medium such as paper in a pattern that matches the text or image to be copied.  (Sturges ¶ 13.)  Because toner is consumed each time a copy is made, the toner supply must be replenished periodically throughout the life of the copier.  (*Id.*)  Both the nature of toner that is used and the manner in which that toner is supplied to the copy machine have a substantial impact on the quality of the copies that the machine creates.  (Kitamori ¶ 6.)  Because toner is a very messy substance, it is desirable that the toner be contained and provided to the user in a manner that allows the user to refill the machine without causing any unwanted leaking of toner on himself or within the copy machine.  (*Id.*)  An ideal toner bottle is one that is easily installable and removable by a user, one that reliably seals the

---

[2]    "Kitamori ¶ __" refers to the numbered paragraphs of the accompanying DECLARATION OF NAOTO KITAMORI IN SUPPORT OF PLAINTIFF'S MOTION FOR ENTRY OF DEFAULT JUDGMENT AND PERMANENT INJUNCTION.  "Kitamori Ex. __" refers to the exhibits of that declaration.

toner within the container when the container is outside the copier, one that discharges the right amount of toner at the right time when installed in the copier, and one that is economical. (Sturges ¶ 14.)  The toner bottle described and claimed in Canon's '012 patent meets each of these criteria.  (*Id.*)

The patented Canon technology at issue in this lawsuit relates specifically to a new and improved toner bottle having a unique structure that (1) allows the toner bottle to be opened following its insertion into a copy machine, (2) allows the toner bottle to be rotated during the copying operation of the machine so that toner is discharged smoothly, and (3) allows the toner bottle to be resealed after the toner is used up, while the bottle is still in the copier, so that the bottle can be safely removed from the copier without spilling any residual toner that may remain in the bottle.  (Kitamori ¶ 12.)  A key feature of the invention of the '012 patent is its "sealing member," which is constructed to perform these multiple functions.

The inventions described and claimed in the '012 patent are important to Canon and have wide applicability to many of Canon's toner bottle products, both existing and planned. (Kitamori ¶ 13.)  Currently, there are 20 different Canon toner bottle products sold in the United States that utilize the inventions of the '012 patent.  (*Id.*)  Canon made significant investments in the research, development, and marketing of these toner bottle products and their compatible copiers.  (Kitamori ¶ 13.)

Since 2007, Canon has designed most of its new copy machines to utilize toner bottles that incorporate the inventions of the '012 patent, and Canon plans to continue to do so for the foreseeable future.  (*Id.*)  The next several years will be an important time in the life of the '012 patent, as Canon attempts to recoup its substantial investments.  (*Id.*)

As noted, a key feature of the invention of the '012 patent is its multi-functional sealing member. The '012 patent discloses several preferred examples of suitable sealing members. (Sturges ¶ 17.) An example of one such sealing member is shown in FIGS. 23A and 23B of the patent, which are reproduced below.



**FIG. 23A**                    **FIG. 23B**

The sealing member has two main portions: a sealing portion (2b), which fits snugly within the opening of the container body in order to seal the toner therein, and a coupling portion (2c), which is engageable with a portion of the copier—called a hollow cylindrical driving member—in order to (1) move the sealing member and the container body relatively away from each other to unseal the opening, and (2) receive rotational drive force from the copier. (Sturges ¶ 18.) The coupling portion includes supporting portions (2f), engaging portions (3), and displacing force receiving portions (4). (*Id.*)

When the toner bottle is installed in the copier, the supporting portions of the sealing member first elastically displace inwardly so that the coupling portion can enter the hollow cylindrical driving member, and then elastically restore outwardly so that the engaging portions engage with a slot in the driving member. (Sturges ¶ 24.) Once the engaging portions have engaged with the slot, the driving member and the container body are moved relatively away from each other to unseal the opening of the container body. (Sturges ¶ 25.) With the opening

unsealed, the driving member imparts rotational force to the sealing member and container body, causing the toner to be fed out of the opening in the container body and into the toner hopper within the copier.  (Sturges ¶ 26.)  To remove the toner bottle from the copier, the sealing member is snugly fit back into the opening of the container body, and a hollow cylinder (21) in the copier forces the displacing force receiving portions (4) inwardly, causing the supporting portions to elastically displace in an inward direction and the engaging portions to disengage from the slot in the driving member.  (Sturges ¶¶ 27 & 28.)  The toner bottle then can be safely removed from the copier without any toner leakage.  (*Id.*)

### B.      UniNet and Its Infringing Activities

Since UniNet was established in 1995, it has experienced "16 years of unprecedented growth."  (Kitamori Ex. A at 4 & 11.)  As of 2011, UniNet employs over 500 people and operates 14 office locations in 11 different countries.  (*Id.* at 7-10.)  In addition to toner bottle products, UniNet's product line includes a multitude of items, such as printer toner, chips, laser, ink for multifunction products, copier and cartridge components, and others.  (*Id.* at 3.)  Defendant UniNet Imaging, Inc., headquartered in California, is the parent of Defendant UI Supplies, Inc., which is located in New York and operates as UniNet Imaging, Inc.'s East Coast distributor.  (Kitamori Ex. B.)

UniNet has infringed the '012 patent by making, using, importing, selling and/or offering to sell at least the following toner bottle products that UniNet promotes for use in the indicated Canon imageRUNNER copy machines:

| UniNet Product # | Promoted For Use In | Corresponding Genuine Canon Toner Bottle Product |
|---|---|---|
| 11717 | imageRUNNER 2230/2270/2830/2870/3225/ 3235/3245/3530/3570/4570 | GPR-15/16 |
| 11718 | imageRUNNER 5070/5570/5570N/6570/ 6570N | GPR-17 |
| 13714 | imageRUNNER 7086/7090/7095/7105 | GPR-19 |
| 13691 | imageRUNNER 5050/5055/5065/5075 | GPR-24 |
| 15929 15930 15931 15932 | imageRUNNER ADVANCE C5030/C5035 | GPR-31 |

UniNet's infringing toner bottle products are "generic" or "non-OEM," meaning they are manufactured by someone other than the manufacturer of the copy machine (sometimes called the "original equipment manufacturer" or "OEM"). (Kitamori ¶ 15.) Because manufacturers of non-OEM toner bottle products do not invest nearly as much in research and development as the OEM does, non-OEM toner bottle products are generally priced substantially below OEM prices in an effort to take market share from the OEM. (*Id.*) For example, UniNet sells some of the accused toner bottle products for less than half the price that national retailers charge for corresponding genuine Canon products. (*Id.*)

### C.    UniNet's Default

Despite being properly served months ago, UniNet still has not responded to Canon's complaint or otherwise entered an appearance in this case.

On September 16, 2011, a private process server personally served the summons and complaint on UI Supplies, Inc. by delivering the same to Corporation Service Company, the registered agent for service of process for UI Supplies, Inc., at 80 State Street, Albany, New York 12207. (Doc. 10.) UI Supplies was required to respond to the complaint by October 7, 2011, but failed to do so.

On September 27, 2011, a private process server personally served the summons and complaint on UniNet Imaging, Inc. by delivering the same to a woman, who identified herself as a person authorized by UniNet Imaging, Inc. to receive service of process, at UniNet Imaging, Inc.'s principal place of business, located at 3232 West El Segundo Boulevard, Hawthorne, California 90250. (Doc. 9.) UniNet Imaging, Inc. was required to respond to the complaint by October 18, 2011, but, like UI Supplies, Inc., has failed to do so.

On October 28, 2011, Canon requested entry of default against UniNet Imaging, Inc. and UI Supplies, Inc. for failure to plead or otherwise defend the action. (Doc. 15.) In support of its request, Canon submitted a declaration, dated November 1, 2011, stating that UniNet Imaging and UI Supplies are not infants, incompetent persons, or members of the military services. (Doc. 16.) The Clerk of the Court entered the default of UniNet Imaging, Inc. and UI Supplies, Inc. on November 2, 2011. (Doc. 17.)

On November 1, 2011, Mr. Marc Hankin of the law firm Hankin Patent Law contacted Canon's counsel for the first time and introduced himself as UniNet's counsel. Settlement discussions between Canon's counsel and Mr. Hankin ensued. On November 14, 2011, after it became clear that the parties would not be able to settle this case, Mr. Hankin informed Canon's counsel that UniNet intended to notify the Court that it would be filing an answer by November 21, 2011. Canon's counsel has not heard anything further from Mr. Hankin, nor to Canon's

-7-

knowledge has Mr. Hankin filed an answer (or any other papers) or formally entered an appearance with the Court.

### III.    ARGUMENT

#### A.    Canon Is Entitled to Default Judgment Against UniNet

Now that Canon has secured the Clerk's entry of default under Federal Rule of Civil Procedure 55(a) by demonstrating that UniNet is in default, Canon may move the Court for entry of default judgment. *See* Fed. R. Civ. P. 55(b)(2). Failure to plead or otherwise defend the action by a defendant, such as UniNet, generally warrants entry of default judgment. *See Toolchex, Inc. v. Trainor*, No. 3:08-CV-236, 2009 WL 2244486, at \*1 (E.D. Va. July 24, 2009).

Before entering default judgment against UniNet, the Court must satisfy itself of the jurisdictional basis and merits of Canon's underlying patent infringement claim. *See Integrated Sports Media, Inc. v. Buruca Brother's Va., Inc.*, No. 1:11cv0839, 2011 WL 5873967, at \*2 (E.D. Va. Nov. 1, 2011). Upon entry of UniNet's default by the Clerk, all well-pleaded allegations set forth in Canon's complaint were deemed admitted. *See EMI April Music, Inc. v. White*, 618 F. Supp. 2d 497, 505 (E.D. Va. 2009); *see also* Fed. R. Civ. P. 8(b)(6) ("An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."). Therefore, as long as the allegations in Canon's complaint present a sufficient basis to support a finding of liability—which they do— default judgment against UniNet is proper. *See Hammerhead Entm't, LLC v. Ennis*, No. 4:11cv65, 2011 WL 2938488, \*2 (E.D. Va. July 19, 2011).

#### 1.    The Court Has the Requisite Jurisdiction

The Court must have subject matter and personal jurisdiction over UniNet before it can render a valid default judgment. *See Integrated Sports*, 2011 WL 5873078, at \*2. Because all jurisdictional facts alleged in the complaint were deemed admitted upon the entry of default

-8-

against UniNet, Canon need only demonstrate that the facts as alleged in the complaint satisfy the requirements for jurisdiction. *See id.* at *3; *see also Zen Design Group, Ltd. v. Clint*, No. 08-cv-14309, 2009 WL 4050247, at *3 (E.D. Mich. Nov. 23, 2009) ("As alleged in the complaint, and accepted as true for purposes of default judgment, [the defendant] offered for sale, and sold, infringing products and/or committed infringing acts in Michigan.").

Canon's complaint alleges that the Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action arises under the patent laws of the United States, Title 35 of the United States Code. (Doc. 1 at ¶ 8.) The complaint further alleges that UniNet is subject to the personal jurisdiction of this Court, consistent with the Virginia Long-Arm Statute and principles of due process, because UniNet is doing business, supplying products and/or committing patent infringement in Virginia, including within this district, directly or through intermediaries (*e.g.*, distributors, resellers). (*Id.* at ¶¶ 9 & 18.) Canon also alleges that venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b) and (c), 28 U.S.C. § 1400(b), and Local Civil Rule 3(C). (*Id.* at ¶ 10.) Moreover, service of process was proper because private process servers personally served the summons and complaint on UI Supplies, Inc.'s registered agent and copies of the same on UniNet Imaging, Inc.'s authorized agent. *See* Fed. R. Civ. P. 4(h).

Accordingly, the Court has both subject matter and personal jurisdiction, and both venue and service of process are proper.

### 2.   UniNet Is Liable for Patent Infringement

#### a.   The Allegations in the Complaint Sufficiently Establish Liability

To obtain a default judgment, Canon need only show that the facts alleged in the complaint, which are deemed admitted by virtue of UniNet's default, satisfy the requirements of a patent infringement cause of action. *See Hammerhead*, 2011 WL 2938488, *2. Taking the

allegations as admitted, the complaint clearly contains sufficient allegations of patent infringement.  The complaint alleges that Canon is the owner of the '012 patent and that UniNet directly and indirectly infringed the claims of this patent by making, using, importing, selling and/or offering to sell toner bottle products embodying the patented inventions, without authority or license of Canon.  (Doc. 1 at ¶¶ 12 & 22-23.)

As the allegations in the Complaint sufficiently establish a claim for patent infringement, Canon is entitled to default judgment against UniNet.  *See Integrated Sports*, 2011 WL 5873078, at *4); *Telequip Corp. v. The Change Exchange*, 2006 WL 2385425, at *1 (N.D.N.Y. Aug. 15, 2006).

### b.      Dr. Sturges' Declaration Confirms That UniNet Has Infringed the '012 Patent

While the allegations in the complaint alone are adequate to establish liability, Canon additionally offers the accompanying declaration of a technical expert, Dr. Sturges, to corroborate the facts admitted by virtue of default.  As detailed in his declaration, Dr. Sturges has carefully examined the accused UniNet toner bottle products and concluded that they infringe at least claims 1-5, 8, 10, 23-27, and 30 of the '012 patent.  (Sturges ¶¶ 2, 35, 36.)  At pages 17-33 of his declaration, Dr. Sturges provides a claim chart with annotated photographs showing how exemplary claim 24 reads on each of two representative UniNet toner bottle products.

### B.      As Relief, Canon Is At Least Entitled to a Permanent Injunction

Canon's complaint prays for relief in the form of a permanent injunction, compensatory and enhanced damages, attorney fees, interest, and costs.  (Doc. 1 at 7.)  For purposes of the

default judgment sought by this motion, Canon does not seek compensatory damages, enhanced damages, attorney fees, interests, or costs, and seeks only issuance of a permanent injunction.[3]

The Court may "grant injunctions in accordance with the principles of equity to prevent the violation of any right secured by patent, on such terms as the court deems reasonable." 35 U.S.C. § 283. To obtain a permanent injunction in this patent infringement action, Canon must demonstrate the following four factors:

(1)     that it has suffered an irreparable injury;

(2)     that remedies available at law, such as monetary damages, are inadequate to compensate for that injury;

(3)     that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and

(4)     that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). In evaluating these factors, the Court "should be mindful of the long-standing historical practice of granting injunctive relief upon a finding of infringement in the vast majority of cases." *Zen Design*, 2009 WL 4050247, at *4 (citing concurring opinion in *eBay*, 547 U.S. at 395); *see also Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1149 (Fed. Cir. 2011) ("While the patentee's right to exclude alone cannot justify an injunction, it should not be ignored either.").

Here, all four permanent injunction factors weigh in favor of granting a permanent injunction against UniNet.

---

[3]     Canon nonetheless reserves the right to seek damages from UniNet's supplier(s), or from UniNet itself should UniNet commit further acts of infringement after entry of default judgment. In the event UniNet opposes this motion and the Court declines to enter default judgment, Canon requests that the Court award Canon its costs and attorney fees incurred in bringing this motion, responding to UniNet's opposition, and preparing for and attending any oral argument on the motion, all of which would have been avoided had UniNet timely responded to the complaint.

**1.      Canon Has Suffered and Will Continue to Suffer Irreparable Harm in the Absence of a Permanent Injunction**

Irreparable harm is an injury of the type that is not fully compensable by an award of monetary damages. *See Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1456-57 (Fed. Cir. 1988). "[B]ecause the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole." *Id.*; *see also ePlus, Inc. v. Lawson Software, Inc.*, No. 3:09cv620, 2011 WL 2119410, at *6 (E.D. Va. May 23, 2011) ("[T]he violation of the right of exclusion during the limited term of the patent grant is an injury not easily repaired by damages at law.") (quoting *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, No. 04C5312, 2008 WL 4531371, at *2 (N.D. Ill. May 22, 2008)). Types of irreparable harm include, for example, loss of market share and goodwill and damage to reputation. *See ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc.*, No. 2:10cv248, 2011 WL 5878365, at *2 (E.D. Va. Nov. 23, 2011). When there is direct marketplace competition between the patentee and the alleged infringer, as there is here between Canon and UniNet, such "weighs heavily in favor of a finding of irreparable injury." *i4i L.P. v. Microsoft Corp.*, 670 F.Supp.2d 568, 599 (E.D. Tex. 2009), *aff'd in part and modified in part*, 598 F.3d 831 (Fed. Cir. 2010); *see also ePlus*, 2011 WL 2119410, at *7 ("The fact that [patentee] and [infringer] directly compete in a marketplace is a significant factor in favor of a finding of irreparable harm.").

Here, UniNet's infringement has irreparably harmed and will continue to irreparably harm Canon in all the aforementioned ways.

**a.      Loss of Market Share**

As alleged in the complaint, UniNet markets its accused toner bottle products as purported alternatives to genuine Canon toner bottle products manufactured by Canon and sold

-12-

under the Canon brand name.  (Doc. 1 at ¶ 17.)  Every sale made by UniNet is a sale that Canon

potentially would have made absent UniNet's infringement.  (Kitamori ¶ 18.)  In some cases,

UniNet's accused products sell for less than half the price that retailers charge for Canon's

genuine products.  (Kitamori ¶ 15.)  Due to this price advantage, once a customer purchases or

uses a generic replacement toner bottle product, such as UniNet's, that customer is likely to

continue to purchase or use generic toner bottle products.  (Kitamori ¶ 19.)  Moreover, the

purchase or use of generic toner bottle products for one type of Canon copier is likely to lead to

the purchase or use of generic toner bottle products for other types of Canon copiers.  (*Id.*)  This

loss of market share is the very essence of irreparable harm.  *See Abbott Labs. v. Sandoz, Inc.*,

544 F.3d 1341, 1361-62 (Fed. Cir. 2008) (citing Federal Circuit precedent supporting the district

court's conclusion that "market share and revenue loss" constitute irreparable harm); *Purdue*

*Pharma L.P. v. Boehringer Ingelheim GMBH*, 237 F.3d 1359, 1368 (Fed. Cir. 2001) (upholding

the district court's finding of irreparable harm based on "the likelihood of price erosion and loss

of market position"); *Canon Computer Sys., Inc. v. Nu-Kote Int'l, Inc.*, 134 F.3d 1085, 1090

(Fed. Cir. 1998) (citing "potential loss of market share" as a type of irreparable harm);

*ActiveVideo*, 2011 WL 5878365, at *7 (noting that "losses associated with market share … are

difficult to quantify"); *i4i*, 670 F.Supp.2d at 600 ("This continuing loss of market share … is the

type of injury that is both incalculable and irreparable."); *EZ Gard Indus., Inc. v. XO Athletic*

*Co.*, No. 07-4769, 2008 WL 1827490, at *4 (D. Minn. Apr. 23, 2008) ("Lost sales, particularly

sales lost to an infringing product, cannot be remedied by dollar damages alone.  They are likely

to have an irreparable effect on plaintiff's pricing structure and market share."), *aff'd*, 302 Fed.

Appx. 920 (Fed. Cir. Dec. 15, 2008).

### b.        Loss of Goodwill and Injury to Reputation

Because UniNet sells its generic toner bottle products for less than Canon's products, many who encounter the UniNet products will incorrectly assume there is no reason why Canon's products cannot be sold for the same price as UniNet's products.  (Kitamori ¶ 20.)  They likely will not appreciate that the price difference is attributable to Canon's need to recoup its research, development, and marketing investments.  (*Id.*)  They are unlikely to appreciate that UniNet is able to sell its toner bottle products for lower prices because UniNet's products use Canon's patented technology, which Canon developed at great effort and expense.  (*Id.*)  If UniNet's infringement is not enjoined, a substantial percentage of customers likely will end up resenting Canon for its higher prices, causing a loss of goodwill and injury to Canon's reputation.  (*Id.*)  Such loss of goodwill and injury to reputation is irreparable.  *See Baker Hughes Inc. v. Nalco Co.*, 676 F. Supp. 2d 547, 554 (S.D. Tex. 2009) (noting that harm to the patentee's "good name and ability to conduct business" likely would result if the patentee tried to resume elevated pricing after discounted sales by other parties); *Bushnell, Inc. v. Brunton Co.*, 673 F.Supp.2d 1241, 1263 (D. Kan. 2009) (finding reputational harm and loss of goodwill where customers questioned why the patentee's product cost so much more than the accused infringer's product); *Toolchex*, 2009 WL 2244486, at *2  ("Damages to reputation and goodwill are not items that are easily measured by a legal calculation of damages"); *Warrior Sports, Inc. v. STX, L.L.C.*, No. 07-14597, 2008 WL 783768, at *12 (E.D. Mich. Mar. 19, 2008) (finding that the sale of an infringing product at a substantially lower price could engender distrust of the patentee's higher prices, which "is not readily translated into money damages").

### 2.        Monetary Damages Are an Inadequate Form of Compensation

"Whether a patentee has an adequate remedy at law 'inevitably overlaps' with whether a patentee has suffered irreparable harm."  *See ePlus*, 2011 WL 2119410, at *13 (quoting

-14-

*MercExchange L.L.C. v. eBay, Inc.*, 500 F.Supp.2d 556, 582 (E.D. Va. 2007)). Therefore, many of the same factors supporting a finding of irreparable harm can be used to support a finding that monetary remedies are inadequate. *See ActiveVideo*, 2011 WL 5878365, at \*7.

Here, monetary damages are an inadequate form of compensation because, as discussed above, Canon has suffered and will continue to suffer harm to its market share, goodwill, and reputation as a leader and innovator in technology, all of which are difficult to quantify. (Kitamori ¶ 21.) It would be exceedingly difficult, if not impossible, to convert Canon's unquantifiable harms into an estimate of monetary damages. (*Id.*) Accordingly, damages would not adequately compensate Canon for the harms that it has suffered and will continue to suffer as a result of UniNet's infringing toner bottle products.

### 3.    The Balance of Hardships Weighs in Canon's Favor

The third factor to be considered is the relative hardship to the parties. In making this assessment, the Court must compare "the relative effect of granting or denying an injunction on the parties." *ePlus*, 2011 WL 2119410, at \*16 (quoting *i4i*, 598 F.3d at 862) .

Canon would face severe hardship without a permanent injunction. Canon has invested significant time and resources to research, develop, and market the inventions of the '012 patent. (Kitamori ¶ 22.) A denial of relief, thereby allowing UniNet to continue to sell infringing toner bottle products, would hinder Canon's ability to recoup its investment. (*Id.*) Moreover, the market for replacement toner bottle products is a tempting and lucrative one, especially for those looking to take advantage of the efforts and expenditures of OEMs like Canon. (Kitamori ¶ 23.) If UniNet's infringement goes unchecked, other would-be infringers will be encouraged to enter the market, and demand for Canon's genuine toner bottle products will decline further. (*Id.*)

While the harm to Canon is clear and significant, any hardship experienced by UniNet will be slight. UniNet's 2011 product catalog features an extensive and diverse product line, and

boasts that UniNet has "over 15,000 quality products in stock."  (Kitamori Ex. A at 11.)  Only eight of those products are implicated here.  Neither UniNet's survival nor its well-being is likely to be jeopardized if UniNet is enjoined from further sales of the infringing toner bottle products. *See ePlus*, 2011 WL 2119410, at \*16 (finding that defendant's survival would not be at risk if permanently enjoined from selling infringing products, in part because it has "many different product offerings unrelated to its infringing [product]" and "will still be able to compete in the [relevant] market").  UniNet's failure to appear and defend itself in this litigation speaks volumes about how little is at stake from UniNet's perspective.

Accordingly, the balance of hardships in this case tips decidedly in Canon's favor.

### 4.      The Public Interest Favors the Grant of a Permanent Injunction

The public interest is served by the prompt enforcement of patents.  *See ActiveVideo*, 2011 WL 5878365, at \*8 ("The Court concludes that the public has an interest in protecting patent rights, and the Court acknowledges that public policy generally favors the enforcement of such rights.").  This is because a permanent injunction that enforces a valid patent furthers public policy inherent in the patent laws, which are designed to encourage useful inventions by rewarding the inventors with a limited period of market exclusivity.  *See ePlus*, 2011 WL 2119410, at \*17  ("The Federal Circuit has long acknowledged the importance of the patent system in encouraging innovation.") (citation and internal quotes omitted).  In fact, courts give "considerable weight to the strong public interest in favoring entry of injunctive relief to protect … patent rights."  *Id.* ; *see also Enpat, Inc. v. Budnic*, No. 6:11-cv-86, 2011 WL 1196420, at \*5 (M.D. Fla. Mar. 29, 2011)  ("[T]he public interest factor typically weighs in favor of granting injunctive relief.").

Here, a permanent injunction prohibiting UniNet from selling the accused toner bottle products will not harm any public interest, much less a critical one.  There will be no shortage of

-16-

toner, as Canon is ready and able to meet the demand for toner by UniNet's customers, most if not all of whom presumably used to buy genuine Canon toner bottle products.  (Kitamori ¶ 13.) Accordingly, the issuance of a permanent injunction in this case serves the public interest by encouraging innovators like Canon "to engage in the toils of scientific and technological research."  *Telequip*, 2006 WL 2385425, at \*2  ("[W]ithout the right to obtain an injunction, the right to exclude granted to the patentee would have only a fraction of the value it intended to have, and would no longer be as great an incentive to engage in the toils of scientific and technological research.") (citation omitted).

## IV.   CONCLUSION

For the foregoing reasons, Canon's motion for default judgment and issuance of a permanent injunction against UniNet should be granted.

Dated: December 30, 2011

Respectfully submitted,
/s/ Craig C. Reilly
Craig C. Reilly (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
Tel: (703) 549-5354
Fax: (703) 549-2604
E-mail: craig.reilly@ccreillylaw.com

Edmund J. Haughey (VSB # 42845)
FITZPATRICK, CELLA, HARPER & SCINTO
975 F Street, NW
Washington, DC 20004-1462
Tel: (202) 530-1010
Fax: (202) 530-1055
E-mail: ehaughey@fchs.com
Attorneys for Plaintiff Canon Inc.

-17-

-18-

Of Counsel:

Nicholas M. Cannella
Michael P. Sandonato
FITZPATRICK, CELLA, HARPER & SCINTO
1290 Avenue of the Americas
New York, New York 10104-3800
Tel: (212) 218-2100
Fax: (212) 218-2200
E-mail: ncannella@fchs.com, msandonato@fchs.com

Attorneys for Plaintiff Canon Inc.

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing pleading or paper was served on Defendants through their below listed counsel of record through the Court's CM/ECF system on this the 30th day of December 2011.

| | |
|---|---|
| *The action against defendant Color Imaging, Inc. has been severed and transferred (Doc. 19) and no service on that party is required.* | *Defendants UniNet Imaging, Inc. and UI Supplies, Inc. have not formally appeared, and the Clerk has entered default against them (Doc. 17), and no service is now required under Rule 55(b); however, Canon Inc. is serving a copy of this paper on the below attorney who purports to represent these defendants:*<br><br>Marc Hankin, Esq.<br>HANKIN PATENT LAW<br>A PROFESSIONAL CORPORATION<br>6404 Wilshire Boulevard, Suite 1020<br>Los Angeles, CA 90048-5512 |

/s/ Craig C. Reilly
Craig C. Reilly, Esq. (VSB # 20942)
111 Oronoco Street
Alexandria, Virginia 22314
TEL:   (703) 549-5354
FAX:   (703) 549-2604
EMAIL: craig.reilly@ccreillylaw.com
Attorney for Plaintiff Canon Inc.

-19-